UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH R. HANSEN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 17 C 3131<br><br>Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Hansen filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c) and 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB benefits on May 5, 2014, alleging that he became disabled on September 20, 2007. (R. at 264–69). These claims were denied both initially on November 12, 2014 and upon reconsideration on May 12, 2015. (*Id.* at

196, 202). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on June 30, 2016. (*Id.* at 37–105). The ALJ also heard testimony from Jeffery W. Lucas, a vocational expert (VE). (*Id.*). Plaintiff's counsel was also present at the hearing. (*Id.*). The ALJ denied Plaintiff's request for DIB on September 23, 2016. (R. at 17–36).

Plaintiff filed prior applications for disability insurance and supplemental security income on July 7, 2011. (R. 176). The claims were denied initially on January 6, 2012 and again on reconsideration on July 9, 2012. (*Id.*). The ALJ denied Plaintiff's petition for a hearing on October 22, 2012, finding that the claimant was not disabled at any point through the decision. (*Id.* at 20, 176). This decision was upheld on appeal by the Appeals Council on April 4, 2014. (*Id.*) The issue of disability from the alleged onset date of September 20, 2007 through October 22, 2012, the date of the prior final decisions, is governed by the doctrine of *res judicata*. (R. 20). Without new and material evidence or good cause that would warrant reopening of the prior application, the prior decision is administratively final. (*Id.*). The current decision made by the ALJ in September of 2016 only addresses the issue of disability beginning on October 23, 2012, the day after the prior final decision. (*Id.*). Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2012. (*Id.*).

Applying the five-step evaluation process, the ALJ found, at step one, that Plaintiff did not engage in substantial gainful activity during the period from October 23, 2012, the day after the prior decision, through his date last insured of

December 31, 2012. (R. at 22). At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety, depression, obesity, and a lumbar and cervical spine disorder. (*Id.* at 23). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations through the date last insured. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC) and determined that Plaintiff has the RFC to perform medium work as defined in 20 CFR 404.1567(c) with the following restrictions:

> Never climb ladders, ropes or scaffolds; stoop occasionally; never operate a commercial motor vehicle; he is able to understand, remember, carry out and perform simple, routine and repetitive tasks, but not at a production rate pace, for example an assembly line worker; involving only simple work related decisions with the ability to adapt to only routine workplace changes; he is able to occasionally interact with supervisors and coworkers; and only have superficial non-transactional interaction with the general public.

(R. at 25). The ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 29). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony that Plaintiff is capable of performing work as a power screwdriver operator, janitor, or cleaner, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 30). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the October 23, 2012, through December 31, 2012, the date last insured. (*Id.*).

On February 23, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A Court reviewing the Commissioner's final decision may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit

meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's arguments that the ALJ erred in failing to discuss subsequent medical evidence that showed Plaintiff's impairments prior to the date last insured and in evaluating Plaintiff's subjective symptom statements.[1]

**A. Subsequent Medical Evidence**

First, Plaintiff argues that the ALJ erred in failing to consider an April 2013 CT scan simply because it occurred after the date last insured. This CT scan showed

---

[1] Because the Court remands on these grounds, it need not address Plaintiff's other arguments at this time.

5

the following issues: osteopenic changes; degenerative disk disease, worse at C6-C7; bilateral foraminal stenoses of at least moderate degree through most levels, worse at C5-C6 and C6-C7; moderate to severe degenerative stenosis at C3-C4, C4-C5, worse at C5-C6 and C6-C7, broad based disk protrusion at level L4-L5, mild to moderate central stenosis at L5-S1, severe bilateral foraminal stenoses and lateral recess narrowing at L5-S1. (R. at 412–13). While this scan occurred after the date last insured, Plaintiff argues that it should still be considered. (Pl.'s Mem., Dkt. 15, at 8–9) (citing *Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."). The Court agrees.

An ALJ must consider all relevant evidence, even evidence that postdates the date last insured. *See Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010) *see also Halvorsen v. Heckler,* 743 F.2d 1221, 1226 (7th Cir. 1984) ("Only if we view the evidence from prior to [the date last insured] in isolation, and perhaps not even then, could we say that the administrative law judge's decision was supported by substantial evidence, but the evidence must not be viewed in isolation. . . . The failure of the administrative law judge to consider the [post-date last insured] records thus mandates reversal of this case."); *Freismuth v. Astrue*, 920 F. Supp. 2d 943, 951 (E.D. Wis. 2013) ("[A]s a simple matter of logic, even if medical evidence (such as the post-date last insured opinions of Dr. Everson) did not exist at the date

6

last insured, that fact standing alone does not mean that such evidence lacks probative value as to a plaintiff's pre-date last insured impairments."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (finding an ALJ "has the obligation to consider all relevant medical evidence," and cannot ignore evidence contrary to his conclusions). Here, the CT scan is from a mere four months after the date last insured, and it shows a variety of moderate to severe degenerative ailments that should have been considered by the ALJ, despite the imaging occurring after the date last insured. Degenerative ailments progress over time, and therefore may very well have been present during the relevant time period. The ALJ erred by failing to discuss the CT scan, its implications on Plaintiff's status during the relevant time period, or how it affected Plaintiff's subjective statements regarding his pain.

Defendant's arguments that this oversight is harmless because the CT scan report did not note any functional limitations, and because there was no indication that Plaintiff's physicians recommended any treatment as a result of the CT scan are unavailing. First, medical evidence need not have functional limitations to be relevant. Medical evidence can be used to corroborate a plaintiff's subjective complaints or to show a severe impairment without including functional limitations. Second, Plaintiff was referred to a pain clinic, was put on more medications for his pain management, and participated in physical therapy in the seven months following the CT scan. (R. at 460, 528).

On remand, the ALJ shall consider the CT scan when making determinations for Plaintiff's subjective statements and the RFC determination. *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (finding that the ALJ's failure to look at evidence contrary to her conclusion caused "reason to doubt the accuracy of her credibility determination and of her residual functional capacity assessments.").

**B. Subjective Statements**

The Court next addresses Plaintiff's argument that the ALJ improperly assessed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.[2]

---

[2] Since the ALJ issued his decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (effective March 16, 2016). As SSR 16-3p is simply a clarification of the Administration's interpretation of the existing law, rather than a change to it, it can be applied to Claimant's case. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016). The Court acknowledges the Administration's recent clarification regarding SSR 16-3p, instructing adjudicators only to apply this ruling when making "determinations and decisions on or after March 28, 2016." *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Nevertheless, the Court continues to follow *Cole v.*

8

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p; SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

The Court finds that the only reason provided by the ALJ for rejecting Plaintiff's physical symptom statements is legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837,

---

*Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) indicating SSR 16-3p and SSR 96-7p are not substantively different.

F.3d 771, 778–79 (7th Cir. 2016). The only reason the ALJ gave for discounting Plaintiff's physical symptom allegations is that "[t]he claimant's conservative treatment suggests that his pain, symptoms and limitations were not as severe as he alleged." (R. at 27). The ALJ explained:

> While the claimant took prescription medication, there is no evidence of any additional treatment for his impairment during the time period at issue, including physical therapy, use of TENS unit, injections, nerve blocks or surgery. . . . Moreover, there is no indication in the record that the claimant's treating physicians recommended any greater treatment modalities.

(*Id.*). The ALJ's analysis is inadequate for several reasons.

First, while the regulations instruct ALJ's to take into account the nature of treatment when assessing a claimant's subjective symptoms, *see* 20 C.F.R. § 404.1529(c); SSR 16-3p, here, the ALJ did not explain *how* Plaintiff's "conservative treatment" undermines Plaintiff's allegations of pain. The ALJ must provide sufficient details as to allow the Court to trace the path of the ALJ's reasoning. *See Steele*, 290 F.3d at 942; *Scott*, 297 F.3d at 595. The ALJ did not do so here. Additionally, an ALJ must not draw negative inferences about a claimant's symptoms from a failure to obtain treatment, "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, *8; s*ee Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (finding error when ALJ did not explore reasons for claimant's decision to forgo surgery); *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016). Before making a negative inference for lack of treatment, ALJ's are instructed to consider, *inter alia*, whether a claimant was unable to afford

10

treatment and whether a claimant has structured his or her daily activities so as "to minimize symptoms to a tolerable level." SSR 16-3p, *9–10. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("An inability to afford treatment is one reason that can 'provide insight into the individual's credibility.'") (citations omitted). Here, the ALJ did not discuss reasons why Plaintiff did not take pain medications or whether he structured his daily activities "so as to minimize symptoms to a tolerable level." *See Beardsley*, 758 F.3d at 840. In his testimony, Plaintiff indicated that he did not have any insurance and could not afford to pay for pain medications. (R. at 63). Also in his testimony, Plaintiff described significant limitations in daily activities and having his son assist him with household chores due to pain. (R. at 69–71, 76, 77–78). The ALJ erred by not addressing Plaintiff's testimony about how he structured his activities to tolerate the pain before drawing a negative inference.

Second, the ALJ failed to address the evidence that corroborates Plaintiff's physical symptom allegations. The Seventh Circuit instructs that "where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations." *Zurawski v. Halter*, 245 F. 3d 881, 887–88 (7th Cir. 2001) (*citing Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Here, the ALJ erred by offering no analysis of how the medical evidence that could "reasonably support a claimant's complaint of pain," such as the 2013 CT scan showing moderate to severe degenerative ailments (R. at 412–13), either contradicts or undermines Plaintiff's allegations of pain, *see Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("Ignored was the requirement [ALJs] carefully evaluate all

11

evidence bearing on the severity of pain and give specific reasons for discounting a claimant's testimony about it.") (citing 20 C.F.R. § 404.1529, SSR 96-7p); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (finding that "the ALJ does not explain why the objective medical evidence does not support [claimant]'s complaints of disabling pain, and his failure to do so constitutes error").

Third, the ALJ failed to address most of the requisite factors outlined in SSR 16-3p and its predecessor SSR 96-7p such as daily activities, measures other than treatment used to relieve pain, aggravating factors and other limitations. For instance, as noted above, the ALJ did not discuss numerous limitations on daily activities that Plaintiff described in his testimony and function reports such as difficulties putting on shoes and socks, bathing, going to the grocery store, walking up and downs stairs in his condominium, and needing his son to help him with household chores due to pain. (R. at 69–71, 76, 77–78, 323–330). Without addressing these factors, the Court does not "have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For these reasons, the Court finds that the ALJ did not offer substantial evidence for discounting Plaintiff's symptom statements, which is an error requiring remand. On remand, the ALJ shall reevaluate Plaintiff's allegations with due regard for the full range of medical

12

evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888. The ALJ shall then reevaluate Plaintiff's RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff could have performed.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [15] is **GRANTED**, and the Commissioner's motion for summary judgment [18] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: July 18, 2018

_____
MARY M. ROWLAND
United States Magistrate Judge